TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER
California Bar No. 222875
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3172
    Facsimile: (213) 894-0142
    E-mail: Katie.Schonbachler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:21-CV-00219 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | 15 U.S.C. § 2070(c)(1) |
| $39,000,000.00 IN FUNDS, | [H.S.I.] |
| Defendant. | |

Plaintiff United States of America brings this claim against defendant $39,000,000.00 in Funds, and alleges as follows:

///

## JURISDICTION AND VENUE

1. The government brings this <u>in</u> <u>rem</u> forfeiture action pursuant to 15 U.S.C. § 2070(c)(1).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant is $39,000,000.00 in Funds (the "defendant funds") wired to a United States Treasury account from Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai") and Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong") on or about November 9, 2021.

6. The defendant funds are currently in the custody of United States Customs and Border Protection, Department of Homeland Security, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. Because Gree Zhuhai and Gree Hong Kong have agreed to forfeit the defendant funds, there are no specific persons or entities that the government can identify whose interests may be adversely affected by these proceedings. Nevertheless, the government will publish notice of these proceedings via the internet to any other potential third-party claimants, advising those third parties of their right to file a claim to the defendant funds and an answer to the Complaint for forfeiture.

## BASIS FOR FORFEITURE

<u>The Gree Companies</u>

8. Gree Zhuhai, Gree Hong Kong and Gree USA, Inc. ("Gree USA") are collectively referred to as "the Gree Companies."

9. From 2007 to September 2013, Gree Zhuhai was a large Chinese company that manufactured household appliances ("Gree appliances") for sale in and outside of China, including in the United States.

10. From 2007 to September 2013, Gree Hong Kong was a Chinese subsidiary of Gree Zhuhai that exported Gree appliances to the United States.

11. From 2010 to September 2013, Gree USA was a California corporation with offices in City of Industry, California, and a subsidiary of Gree Hong Kong. Gree USA sold Gree appliances to retailers in the United States. Those Gree appliances were manufactured by Gree Zhuhai and imported into the United States by Gree Hong Kong and Gree USA. Gree USA was a joint venture between Gree Hong Kong and another company, MJC America Holdings Co., Inc. ("MJC America Holdings"). Gree Hong Kong was the majority owner of Gree USA. Gree USA's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), who was the brother of Gree USA's CEO, and Chief Administrative Officer ("CAO") were owners of MJC America Holdings. Gree USA's CEO, CFO and CAO effectively controlled Gree USA.

12. From 2010 to September 2013, Gree USA sold in the United States dehumidifiers manufactured by Gree Zhuhai and imported into the United States by Gree Hong Kong ("Gree dehumidifiers").

The Consumer Product Safety Act

13. The Consumer Product Safety Act (the "CPSA") was enacted to protect the public from dangerous consumer products.

14. The United States Consumer Product Safety Commission (the "CPSC") is the federal agency responsible for protecting consumers from dangerous consumer products and is the lead federal agency responsible for the implementation, enforcement, and administration of the CPSA. The CPSC can order mandatory recalls of dangerous products.

15. The CPSA requires companies that manufacture, import, distribute, or sell consumer products to inform the CPSC, among other things, about any consumer product about which information reasonably supports the conclusion that such product contains a defect that could create a substantial product hazard, or creates an unreasonable risk of serious injury or death. This duty to report also applies to the

individual directors, officers, and agents of those companies. A company's or an individual's knowing and willful failure to report an unsafe product to the CPSC is punishable as a felony violation of the CPSA.

The Gree Companies Learn that Their Dehumidifiers are Catching Fire

16. On or about July 26, 2012, the CEO of Gree USA saw a video of a burning Gree dehumidifier. On July 26, 2012, Gree USA's CEO sent the video to a Gree Hong Kong manager ("Gree Hong Kong Manager #1"), who was also a director of Gree Hong Kong and in charge of exporting Gree appliances for sale in the United States, copying other Gree USA employees and a Gree Zhuhai employee. In sending the video, Gree USA's CEO labeled the email "urgent," and said that the video was "scarey [sic] to just watch" and a "very serious issue with GREE product quality." Gree USA's CEO also stated that the video was the third reported instance of a Gree appliance catching fire since in or about June 2012 and that it could lead to lawsuits against Gree USA as well as a recall costing millions of dollars. Gree USA's CEO knew that the Gree Companies had an obligation to inform the CPSC immediately of any consumer product that contained a defect creating a substantial product hazard or that created an unreasonable risk of serious injury or death.

17. Gree Hong Kong Manager #1, replied to the July 26, 2012 email from Gree USA's CEO that same day. In his reply email, Gree Hong Kong Manager #1 said that "[w]e also felt shock when we watched the video[,]" and that he had sent the video to Gree Zhuhai's Quality Department and to Gree Zhuhai's chief engineer who was also its senior vice president for research and development.

The Gree Companies Learn that Two Defects in Their Dehumidifiers are Causing Them to Catch Fire

18. During August 2012, Gree USA and Gree Zhuhai employees, engineers and officers investigated the Gree dehumidifiers for potential defects that could cause them to catch fire. No employee of Gree USA or Gree Zhuhai informed the CPSC of a defect or risk associated with the Gree dehumidifiers in August 2012.

19. On September 4, 2012, Gree USA's CEO emailed Gree Hong Kong Manager #1 about the Gree dehumidifiers. The CEO stated that Gree USA had tested its dehumidifier inventory in Gree USA's warehouse and the testing showed that these dehumidifiers burned. The CEO stated "the result is not like what you have told us" regarding how many units were involved because "the result shows the units all can catch the fire and apparently the material is not according to UL standard! I don't think the factory is telling us the fact and truth. . . ." The CEO stated that, because of Gree USA's test results, he would have the dehumidifiers further tested for compliance with UL (formerly Underwriters Laboratory) standards and was planning to inform the CPSC about the Gree dehumidifiers.

20. On September 5, 2012, Gree Hong Kong Manager #1 emailed Gree USA's CEO instructing "Gree USA to resolve the claim and CPSC case" and stating that Gree Zhuhai would "fully indemnify Gree USA for any expense and responsibility." That same day, Gree USA's CEO replied and requested more details regarding who would pay the costs that could result from the Gree dehumidifiers and when they would pay, and offered to handle reporting the Gree dehumidifiers to the CPSC if Gree Zhuhai would agree to pay all future costs related to the dehumidifiers' defects. Gree Hong Kong Manager #1 replied on September 6, 2012, stating that they were willing to agree to compensate expenses in a timely manner and that Gree USA "would be the single entity to reply insurance company and CPSC, [and] we will provide the necessary supports of test records and technical information if you need any." After these communications, no one from the Gree Companies informed the CPSC about the Gree dehumidifiers or their defects.

21. On September 10, 2012, Gree USA's CEO emailed the highest ranking person at Gree Zhuhai, the chairperson of Gree Zhuhai's board who also served as Gree Zhuhai's President and CEO, copying no one else from Gree Zhuhai or Gree Hong Kong. In this email, Gree USA's CEO stated that "GREE headquarters" had told him not to report the Gree dehumidifiers to the CPSC. Specifically, the Gree USA CEO

5

1 stated that "GREE headquarters" had told him not to report that the Gree dehumidifiers may be defective and catch on fire and that they might have overheating parts and plastic parts that could burn because the plastic did not meet the UL standard for fire resistance. Gree USA's CEO warned in his email that any company or individual who withheld from the CPSC information about a dangerous product could face severe punishment, including criminal prosecution. Gree USA's CEO asked how Gree Zhuhai would pay future costs related to the Gree dehumidifiers, including any potential harm to MJC America Ltd. ("MJC America"), a company owned by Gree USA's CEO, CFO and CAO which also sold the defective Gree dehumidifiers. Gree USA's CEO stated that if Gree Zhuhai did not give him clear instructions on how to handle the Gree dehumidifiers within a matter of days, then he would inform the CPSC about the dehumidifiers. No one replied to this email.

22. On September 13, 2012, Gree USA's CEO sent another email to Gree Hong Kong Manager #1. In this email, Gree USA's CEO discussed how a recall of the defective Gree dehumidifiers might be handled and attached the CPSC's "Recall Handbook." Gree USA's CEO also discussed the financial costs and lost sales that could result from a recall. He did not express any consideration or concern about how defective Gree dehumidifiers could harm consumers. Gree USA's CEO asked Gree Hong Kong Manager #1 to forward this email to Gree Zhuhai's chief engineer.

23. On September 19, 2012, Gree Hong Kong Manager #1 came to Gree USA's offices in City of Industry, California, to meet with Gree USA's CEO. A Gree Zhuhai engineer and three other Gree USA officers also participated in the meeting. This meeting was audio recorded by agreement.

24. At this September 19 meeting, Gree Hong Kong Manager #1 stated that Gree Zhuhai's testing of the Gree dehumidifiers was not able to reproduce the reported fire, but had revealed two defects: (1) the dehumidifiers used plastics that did not meet UL standards for fire resistance; and (2) electrical arcing caused by the dehumidifiers' compressors overheating could burn the non-UL standard plastic used in these

dehumidifiers. The Gree Zhuhai engineer at the meeting also discussed these defects. Gree Hong Kong Manager #1 stated that he was aware of at least five consumer reports of Gree dehumidifiers overheating and catching fire but that Gree Zhuhai "still believe[d] that the fire case is a relatively isolated case . . . associated with atrocious conditions." He also stated that Gree Zhuhai would modify the manufacture of all future dehumidifiers to fix this problem so they would not catch fire.

<u>The Gree Companies Decide To Delay Reporting and Recalling Their Defective Dehumidifiers</u>

25. At this same September 19 meeting, Gree Hong Kong Manager #1 said that the meeting participants' decisions on what to do about the Gree dehumidifiers should be guided by the principle of minimizing the costs and loss of reputation to the Gree Companies. Gree Hong Kong Manager #1 said that Gree Zhuhai wanted to delay any recall of the dehumidifiers for 6 to 9 months because delaying a recall would reduce the recall's effect on Gree dehumidifier sales. Gree Hong Kong Manager #1 stated that an immediate recall would have a significant, and negative, effect on 2012 and 2013 Gree dehumidifier sales. Gree Hong Kong Manager #1 stated that a recall could be delayed 6 to 9 months because cooler fall and winter temperatures would help prevent Gree dehumidifiers from overheating and catching fire, and that there should be very few, if any, dehumidifier fires in the 6 to 9 months following September 2012.

26. In response to what Gree Hong Kong Manager #1 said, Gree USA's CEO said at the meeting that the Gree dehumidifiers' defects were very significant and had important legal implications. But the Gree USA CEO did not push to inform the CPSC of the dehumidifiers. Rather, Gree USA's CEO recommended only that the Gree Companies have another company test the Gree dehumidifiers and then decide whether to delay the recall. Gree Hong Kong Manager #1 responded by urging the Gree USA officers not to conduct such a test of the Gree dehumidifiers because that test would show that the dehumidifiers used plastic that did not meet UL standards for fire resistance. Gree USA's CEO said that the Gree USA officers understood what Gree

Zhuhai was asking them to do and needed time to think before making a decision about how to proceed.

27. Two days after the September 19, 2012 meeting, Gree USA's CEO sent an email to Gree Zhuhai's chief engineer and copied the email to Gree Zhuhai's board chairperson. In his September 21, 2012 email, Gree USA's CEO said that he understood that Gree Zhuhai wanted to delay a recall of the Gree dehumidifiers for 6 to 9 months. Gree USA's CEO also said that he thought that the Gree dehumidifiers were still likely to catch fire, and that, after careful consideration, Gree USA's officers had decided to report the Gree dehumidifiers to the United States government.

28. The next day, Gree Zhuhai's chief engineer replied to the September 21, 2012 email from Gree USA's CEO without copying Gree Zhuhai's board chairperson. In his September 22, 2012 email, Gree Zhuhai's chief engineer said that Gree Zhuhai had clearly expressed its opinion about how to handle the defective Gree dehumidifiers, and that he hoped Gree USA's CEO would follow that opinion. Gree Zhuhai's chief engineer said that he had no authority to approve what Gree USA's CEO proposed in his September 21, 2012 email and that he hoped Gree USA's CEO would report his decision on how to handle the defective Gree dehumidifiers to Gree Zhuhai's board chairperson and listen to her opinion.

29. On September 28, 2012, Gree USA's CEO sent an email to Gree Zhuhai's board chairperson, copying no one else from Gree Zhuhai or Gree Hong Kong. In his email, Gree USA's CEO stated again that Gree's dehumidifiers had two known defects: (1) the compressors in the dehumidifiers could overheat; and (2) the plastic in the dehumidifiers did not meet UL standards for fire resistance, meaning that the plastic would burn when overheated. Gree USA's CEO said that it was known that these two defects could cause the dehumidifiers to catch fire and that there were numerous consumer complaints about the dehumidifiers in fact catching fire. Gree USA's CEO also said that the Gree Companies had sold millions of these defective dehumidifiers. Gree USA's CEO further related that he believed the Gree Companies should recall the

8

dehumidifiers and warn consumers that using them could result in personal injuries and property damage, but that Gree Zhuhai had not agreed to a recall. Gree USA's CEO warned that a recall could cost hundreds of millions of dollars, would harm the reputation of Gree products, and would reduce the Gree Companies' market share. But Gree USA's CEO also warned that if Gree Zhuhai did not reach an agreement with Gree USA on the recall of the dehumidifiers, then Gree USA unilaterally would report the Gree dehumidifiers to the United States government. Gree USA's CEO concluded his email by saying that this was a very important and urgent matter. Neither Gree Zhuhai's board chairperson nor anyone else at Gree Zhuhai replied to this email.

30. Despite the Gree USA's CEO's September 4, 10, 21, and 28, 2012 emails, no employee of the Gree Companies reported the Gree dehumidifiers' defects or risks, or the known consumer complaints of fires related to the dehumidifiers, to the CPSC in September 2012.

31. In September 2012, Gree USA sold at least 24,999 defective Gree dehumidifiers to retailers in the United States for approximately $2,558,019. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

<u>The Gree Companies Continue to Sell Their Defective Dehumidifiers in the United States Without Reporting Them to the CPSC</u>

32. On October 19, 2012, a sales representative for Gree USA met in person with Gree Zhuhai's board chairperson in China. During this meeting, the sales representative discussed the defective Gree dehumidifiers with Gree Zhuhai's board chairperson. Gree Zhuhai's board chairperson said that she would send a new Gree Hong Kong manager ("Gree Hong Kong Manager #2") to the United States to address the problems associated with the dehumidifiers.

33. In October 2012, Gree USA sent to Gree Zhuhai new consumer reports of fires related to the Gree dehumidifiers. These reports contradicted Gree Hong Kong Manager #1's statements at the September 19 meeting that a recall could be delayed 6 to 9 months because cooler fall and winter temperatures would help prevent dehumidifiers from overheating and catching fire and that there should be very few, if any, dehumidifier fires in the 6 to 9 months following September 2012. Despite these new consumer reports of fires caused by Gree dehumidifiers, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects or risks in October 2012.

34. In October 2012, Gree USA sold at least 2,938 defective Gree dehumidifiers to retailers in the United States for approximately $429,426. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

### The Gree Companies Receive Another Test Report Showing That Their Dehumidifiers are Defective and Dangerous

35. In late October 2012, Gree USA sent two Gree dehumidifiers to an independent testing company for testing. On November 5, 2012, the testing company wrote a report confirming and reiterating that the Gree dehumidifiers were defective because the compressors in the dehumidifiers could run continuously and thereby overheat to an "extreme high temperature." Gree USA's CEO received this report on November 6, 2012. Gree USA's CEO immediately sent the report to Gree Hong Kong Manager #2, who had taken over responsibility for the importation and sale of the Gree dehumidifiers in the United States from Gree Hong Kong Manager #1.

///

### The Gree Companies Continue to Sell Their Defective Dehumidifiers in the United States Without Reporting Them to the CPSC

36. At the end of November 2012, Gree USA's CEO told Gree Hong Kong Manager #2 that an attorney advised him to inform the CPSC immediately of all consumer reports of fires related to the Gree dehumidifiers. Despite this legal advice and the November 5, 2012 test report reiterating that the Gree dehumidifiers were dangerously defective, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in November 2012.

37. In November 2012, Gree USA sold at least 6,817 defective Gree dehumidifiers to retailers in the United States for approximately $792,067. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

### The Gree Companies Have Yet Another Meeting to Discuss Their Defective Dehumidifiers But Still Do Not Inform the CPSC

38. On December 18, 2012, Gree USA's CEO and another Gree USA officer went with an attorney to Hong Kong to meet with Gree Hong Kong Manager #2, a Gree Zhuhai engineer, Gree Zhuhai's Chief Financial Officer ("CFO") and three attorneys representing Gree Zhuhai. At this meeting, Gree USA's CEO discussed the November 5, 2012 test report with Gree Hong Kong Manager #2, the Gree Zhuhai engineer and the Gree Zhuhai CFO. Gree Hong Kong Manager #2, the Gree Zhuhai engineer and the Gree Zhuhai CFO told Gree USA's CEO that Gree Zhuhai would test the Gree dehumidifiers and let him know the results of their testing.

39. No employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in December 2012.

40. In December 2012, Gree USA sold at least 1,395 defective Gree

dehumidifiers to retailers in the United States for approximately $201,835. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

The Gree Companies Decide to Continue Selling Their Defective Dehumidifiers in the United States Without Reporting Them to the CPSC

41. On January 23, 2013, a Gree USA officer sent an email to Gree Hong Kong Manager #2. The email stated that Gree USA's and MJC America's insurance company suggested that Gree USA report the Gree dehumidifiers to the CPSC and recall all of the defective Gree dehumidifiers. The email also stated that the insurance company "wanted to know if any actions were taken to test the product design in case it is defective" and was told that "the product was submitted to several different testing and no faulty [sic] in the design was found[,] also that new production has an extra protection[.]" The Gree USA officer further reported in her email that Gree USA had received a new consumer report of a dehumidifier fire and asked how Gree USA should handle this report.

42. Also on January 23, 2013, Gree Zhuhai told Gree USA in writing that it had tested its dehumidifiers and that they were not defective and could be sold in the United States. Gree Zhuhai did not provide Gree USA with any details on its testing or explain the inconsistency in its test results with those of all prior tests of the Gree dehumidifiers.

43. Despite the recommendation of Gree USA's insurance company to report the Gree dehumidifiers to the CPSC and recall the defective Gree dehumidifiers, and the new consumer report of fire, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in January or February 2013.

44. Gree USA sold at least 7,609 and 29,857 defective Gree dehumidifiers in January and February 2013, respectively, to retailers in the United States for approximately $905,291, and $3,255,542, respectively. The Gree Companies knew that

the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

<u>The Gree Companies Finally Report Their Defective Dehumidifiers to the CPSC but Continue to Sell Those Dehumidifiers in the United States</u>

45. On March 14, 2013, Gree USA, Gree Zhuhai, and MJC America made an initial report to the CPSC about their dehumidifiers. The initial report stated that they had sold approximately 1.6 million Gree dehumidifiers in the United States since 2010, and that consumers who had purchased those dehumidifiers had reported fires, overheating, smoke, odors, and property damage related to these dehumidifiers. The initial report did not mention the defects in the Gree dehumidifiers that caused the dehumidifiers to burn.

46. Gree USA sold at least 6,025 and 7,596 defective Gree dehumidifiers in March and April 2013, respectively, to retailers in the United States for approximately $571,702 and $799,244, respectively. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

47. On April 23, 2013, the Chief Administrative Officer of Gree USA received an independent test report showing that the plastic used in four Gree dehumidifiers made in 2010, 2011, and 2012 did not meet UL standards for fire resistance.

48. On April 30, 2013, Gree USA, Gree Zhuhai, and MJC America made a second, more comprehensive report to the CPSC about their defective Gree dehumidifiers. This report stated that Gree USA, Gree Zhuhai, and MJC America sold

13

approximately 1.84 million of the Gree dehumidifiers and that they had not concluded that these Gree dehumidifiers posed a substantial product hazard or that the dehumidifiers needed to be recalled.  This report listed nineteen known consumer reports of fires involving Gree dehumidifiers with all but one of the fires occurring between June 14, 2012 and April 15, 2013.

49. After their April 30, 2013 report to the CPSC, the Gree Companies continued to receive consumer reports of fires caused by Gree dehumidifiers.

50. The Gree Companies received at least $9,500,000 from the distribution and wholesale of defective Gree dehumidifiers from September 2012 through April 2013. Additionally, the Gree Companies received at least $29,500,000 from the distribution and wholesale of other non-defective Gree dehumidifiers from September 2012 through April 2013.

51. United States consumers lost at least $17,400,000 by purchasing defective and dangerous Gree dehumidifiers manufactured, distributed, or sold by the Gree Companies from September 2012 through April 2013.

52. From September 2012 to April 2013, United States consumers sustained at least $2,100,000 worth of property damaged or destroyed in fires caused by the defective Gree dehumidifiers.

<u>The Gree Companies Imported Their Defective Dehumidifiers with False UL Certifications</u>

53. Between 2010 and at least until September 2012, the Gree Companies imported into the United States Gree dehumidifiers with certifications that the dehumidifiers met all UL standards, when in fact the dehumidifiers did not meet UL standards.

<u>The Gree Companies Finally Recall Their Defective Dehumidifiers</u>

54. By mid-July 2013, Gree Zhuhai decided to recall its defective Gree dehumidifiers and notified the CPSC of this decision.  After making this decision, Gree Zhuhai started to plan for the recall.

55. On September 12, 2013, Gree Zhuhai and the CPSC announced a voluntary recall of 2.2 million Gree dehumidifiers in the United States.

56. Despite its recall, Gree Zhuhai has received hundreds of consumer reports of fires and overheating caused by defective Gree dehumidifiers. Consumers have reported more than 2,000 incidents involving Gree dehumidifiers, including 450 fires and more than $19,000,000 in property damage.

57. No later than September 19, 2012, each of the Gree Companies had information which reasonably supported the conclusion that their Gree dehumidifiers: (1) contained defects which created a substantial product hazard, that is, a substantial risk of injury to the public; and (2) created an unreasonable risk of serious injury or death. After learning this information, each of the Gree Companies knowingly and willfully failed immediately to inform the United States Consumer Product Safety Commission about these dangerous defects in their Gree dehumidifiers or the dangerous risks posed by their Gree dehumidifiers.

58. As a result of the Gree Companies' failure to immediately report their defective Gree dehumidifiers to the United States Consumer Product Safety Commission, the Gree Companies were able to continue to distribute and wholesale their dehumidifiers, including defective Gree dehumidifiers, from September 2012 through April 2013.

59. In the Deferred Prosecution Agreement filed in *United States v. Gree Electric Appliances Inc., et al.*, Case No. 2:21-CR-00498-MCS, Gree Zhuhai and Gree Hong Kong agreed to forfeit $39,000,000.00 (<u>i.e.</u> the defendant funds) as assets associated with their failure to report immediately their defective Gree dehumidifiers to the United States Consumer Product Safety Commission in violation of 15 U.S.C. §§ 2068(a)(4) and 2070. The defendant funds are therefore subject to forfeiture pursuant to 15 U.S.C. § 2070(c)(1).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant funds;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant funds to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: January 11, 2022

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

　　　　　/s/ *Katharine Schonbachler*
KATHARINE SCHONBACHLER
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

**VERIFICATION**

I, Da'Rell Warren, hereby declare that:

1. I am a Special Agent with Homeland Security Investigations and the case agent for the forfeiture matter entitled <u>United States of America v. $39,000,000.00 in Funds</u>.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed January 04, 2022 in Long Beach, California.

DA'RELL L WARREN
Digitally signed by DA'RELL L WARREN
Date: 2022.01.04 14:42:15 -08'00'

_____
DA'RELL WARREN